### PROVIDENCE WASHINGTON INS. CO. *v.* BOWRING *et al.*

*(Circuit Court of Appeals, Second Circuit.    February 16, 1892.)*

No. 59.

**1. MARINE INSURANCE—CONSTRUCTION OF POLICY—EXCESSIVE INSURANCE.**

Where a vessel valued at and insured for $100,000 is a total loss, and all the policies have been paid except one for $5,000, an action thereon cannot be defeated merely because other insurance, to the amount of $28,750, "on advances" incident to the operation of the vessel, has also been paid; and it is immaterial whether such advances were the proper subject of insurance or not, so long as such insurance did not cover the vessel or any of her belongings.

**2. SAME—INSURANCE ON ADVANCES.**

Where marine insurance is effected at Lloyds' "on advances," and those words are written in the valuation clause, which already contains a printed description of all parts of the ship, the policy must be construed to be not upon advances for repairs, but upon something independent of the ship, such as moneys advanced in her business.

46 Fed. Rep. 119, affirmed.

Appeal from the District Court of the United States for the Southern District of New York.

In admiralty.    Libel by Thomas B. Bowring and others against the Providence Washington Insurance Company.    Decree for libelant.    46 Fed. Rep. 119.    Respondent appeals.    Affirmed.

*Harrington Putnam,* for appellant.

*Convers & Kirlin,* for appellees.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge.    By the policy in suit the appellant insured the steamship for the benefit of all persons interested in her in the sum of $5,000 against the peril by which she became a total loss. By its terms the value of the steamship was agreed upon at $100,000. The libelants, the owners of the steamship, before this suit was brought, had been paid $95,000 by other insurers of the steamship upon policies similar to the one in suit.    They had also been paid about $28,750 for

insurance effected at Lloyds', by Hine Bros., the managing owners of the steamship, "on advances." The appellant insists that the libelants had received the full value of the steamship as fixed by the policy in suit, and therefore cannot recover.

There are two questions for consideration in the case: *First*, whether the insurance effected at Lloyds' "on advances" was an insurance upon the vessel herself, according to the proper construction of the policy; and, *secondly*, whether, although not denominated as such in the policy, it was in substance and legal effect an insurance upon the vessel. The first question is one of law, being one of the interpretation of a written instrument; the second is one of fact, because, if the term "advances" signifies moneys expended to enhance the value of the vessel, like repairs, the subject of insurance was really the vessel. No effect can be given to the written words "on advances" in the valuation clause of the policy, unless they mean that the particular property to be insured and valued is something else than that which is described in the printed parts. The policy is in the common form of Lloyds' valued policies, which are printed with blanks for the insertion of the particular terms of the contract to be superadded to the printed forms. The printed parts describe generally the property covered by marine policies, the body, tackle, apparel, and any kind of goods and merchandise of and in the ship, and contain the general conditions of the risk insured against, while the blanks are left for the insertion of a description of the particular subject of insurance and the special conditions of the risk. In a valued policy we should naturally expect to find the property immediately in the contemplation of the parties as the subject of insurance mentioned in the valuation clause; and in Lloyds' forms it is placed there, the printed part containing a description sufficiently broad to cover any part of the ship herself and any part of her cargo, leaving a blank for any other subject of insurance not properly described by the printed language. Thus, for instance, when the insurance is on the freight which the ship may earn on a particular voyage or during a specified period, the words, "on freight chartered or otherwise," together with the agreed valuation, are inserted in writing. When the words "on advances," together with the valuation, are inserted, they cannot be taken to mean any part of the ship or cargo, because all these are already described, not only in the valuation clause, but in the general clause descriptive of the insured property. Greater effect is to be attributed to the written parts than to the printed parts of such contracts, because they are the immediate terms selected by the parties, whereas the others are a general formula. The sensible construction, therefore, of a policy like that now in controversy is that it insures advances against risk from loss of the ship, and the advances thus insured are something independent of and distinct from the ship herself. It is proved that the advances which were intended to be insured in this case were moneys advanced by the managing owners of the vessel in the business of the vessel, and which were in no sense represented by the vessel herself. They consisted largely of premiums for keeping her in-

sured, and they represented other expenditures, such as for coal, other supplies, pilotage, etc., for which the co-owners were liable to account to the managing owners. The amount thus advanced may be deemed the capital of the owners at risk in conducting the business of the ship. As it was fluctuating in amount, the balance at any one time depending upon the difference between expenses and receipts, the sum fixed in the valuation clause was intended to cover the balance which would probably be found existing at any time during the period of the risk. In case of a loss, if the balance proved to be larger than the valuation, the owners would lose the difference; if less, they would gain. It cannot be doubted that the capital invested in carrying on the business of the ship is a proper subject of insurance. As the loss of a ship involves the loss of the money which has been advanced in carrying on her business, to the extent that her owners are deprived of reimbursing themselves from her earnings, the money invested is a marine risk. Expected profits may be insured. *Eyre* v. *Glover*, 16 East, 218; *Stockdale* v. *Dunlop*, 6 Mees. & W. 224. So moneys expended for the ship's use by the master, his commissions, and his privileges, are subjects of marine insurance. *King* v. *Glover*, 2 Bos. & Pul. (N. S.) 206. It may be that an insurance on such advances is, in substance, an insurance upon the earnings of the ship, and that where the freight, "chartered or otherwise," is insured on a time risk, an insurance on advances would be double insurance; and it is doubtless true that insurances on advances offer a cover for frauds upon the underwriters, as, when the ship is also insured, the interest of the assured in the safety of the property is diminished. But if such an interest were not a proper subject of insurance, and if, when made so in a valued policy, the contract is void as a gambling contract, or from any other considerations of public policy, that is a question wholly between the insurer and the assured, in which another insurer has no interest. If the libelants had been paid by other insurers of the vessel the whole value of the vessel, as fixed by the policy in suit, that would undoubtedly be a good defense to the suit, because a contract of insurance is one of indemnity against loss, and the libelants would have been already fully indemnified. But if they have received other insurance upon other property than that insured by the appellant, that circumstance cannot avail the latter. The appellant cannot claim the benefit of any payments received by the libelants under other policies, unless those policies covered the same subject-matter of insurance. If the other policies were illegal, the sums paid under them were pure gifts, and do not inure to the exoneration of another insurer. *Burnand* v. *Rodocanachi*, 7 App. Cas. 333. The case relied upon by the appellant —*Law* v. *British American Assur. Co.*, (MS.,) decided by the supreme court of Nova Scotia—is not in point, because in that case the insurance was for "advances upon the body, tackle, etc., of the ship," and the advances represented repairs upon the vessel by which her value was enhanced to the extent of the sums advanced. In such a case the insurance is in the concrete upon the vessel herself. The judgment below was right, and should be affirmed.

LACOMBE, Circuit Judge, (*concurring.*) This case is very fully set forth in the opinion of the district judge. There can be no doubt that when the policies on so-called "advances" were issued both the assured and the insurers undertook to describe some interest other and different from the ownership of hull and machinery. It seems also very evident that, besides their pait ownership of the *res*, the managing agents, who earn interest and commissions on all moneys they advance from time to time, not for repairs, but to keep the vessel in service, deriving a profit to themselves from such advances, controlling the vessel and her earnings so as to secure their repayment from her profits, and finding their business in such management of the ship, have an interest in her, not identical with that which they have as part owners, entitled to share in her profits if she makes any, in her proceeds if sold, or her insurance if lost. It is not material in this case to determine whether such interest was insurable, or whether the policies on advances did insure it. If they were wager policies or the payments under them a gift, that is no defense to the claim on the policy in suit here. They were not intended to be hull policies, nor paid because they were construed to be. As they purported to cover a different interest from the one defendant has insured, their payment cannot avail to relieve him from liability.