## SHAW *v.* UNITED STATES.

Where a steamer, lying at the time at the wharf at St. Louis, was taken into the service of the United States by a quartermaster of the United States, for a trip to different points on the Mississippi River, the compensation for the service required being stated at the time to the captain, and no objection being made to the service or compensation, and the service was rendered, the possession, command, and management of the steamer being retained by its owner, — *Held*, that the United States were charterers of the steamer upon a contract of affreightment, and that they were not liable, under such a contract, to the owner for the value of the steamer, though she was destroyed by fire whilst returning from the trip, without his fault.

APPEAL from the Court of Claims.

The court below found the facts as follows: —

That on the seventeenth day of September, 1863, the steamboat "Robert Campbell, Jr.," of which the claimant was and continued to be the sole owner, when lying at the wharf in the

port of St. Louis, Mo., fully manned, equipped, and furnished for business on the Mississippi River, was impressed into the military service of the United States by Captain Charles Parsons, assistant-quartermaster of the United States army, for especial duty between Memphis and Vicksburg, loaded with army stores and troops, and ordered by said Parsons to proceed down the Mississippi River to Memphis, Tenn., and there report to Captain J. V. Lewis, assistant-quartermaster. The orders stated the terms on which the boat was employed. The boat left St. Louis on said service about the 25th of that month, officered and manned by officers and men employed by the claimant.

While in the said service of the government she was, on the 28th of September, 1863, consumed by fire, and became a total loss to the claimant, without any fault or negligence on his part, or that of her officers or crew.

In October, 1863, the account of the United States with said boat, for her use and service as a transport from Sept. 17 to Sept. 28, was allowed and paid by Brigadier-General Robert Allen, quartermaster United States army.

In February, 1864, the claimant submitted to the third auditor of the treasury his claim for $70,000 against the United States, for the value of said boat at the time she was taken into the service of the government.

At the same time, he claimed a balance of $859.91, as due him on account of stores lost with the boat when she was consumed, and which he averred had been furnished by the officers of the boat for the subsistence of the crew.

At the time of her loss she was worth $70,000, and was insured for $25,000, by policies for $5,000, in each of the following companies; namely, the Atlantic Mutual Insurance Company, the Globe Mutual Insurance Company, the United States Insurance Company, the Eureka Insurance Company, and the Phœnix Insurance Company. In each policy, except that of the Atlantic Mutual Insurance Company, the boat was valued at $38,000; and in all of said policies there was a limitation of $30,000, as the total amount which was allowed to be insured on the boat.

In the policies issued by the Atlantic Mutual and United

States companies, the claimant was insured; but the policies stipulated that the loss, if any, should be paid to Robert Campbell; and the losses under those policies — viz., $5,000 under each — were paid to said Campbell.

In the policy issued by the Eureka the claimant was insured; but the policy stipulated that the loss, if any, should be paid to Robert Campbell & Co.; and the loss was so paid.

In the Phœnix and Globe policies the claimant was insured, and the losses thereunder were paid to him.

On the 25th of May, 1864, the third auditor rendered the following award in favor of the claimant : —

*Award No. 32.*— *Second Section of the Act of 3d March,* 1849.

"TREASURY DEPARTMENT,
"THIRD AUDITOR'S OFFICE, May 25, 1864.

"In pursuance of an act of Congress approved 3d of March, 1849, entitled 'An Act to provide for the payment of horses and other property lost or destroyed in the military service of the United States,' as amended and construed by the fifth section of the act of March 3, 1863, it is adjudged by me, that there is due from the United States to John S. Shaw, for the steamboat 'Robert Campbell, Jr.,' of St. Louis, Mo., burned on the Mississippi River, near Milliken's Bend, on the twenty-eighth day of September, 1863, while in the military service of the United States, under impressment, the sum of fifty-seven thousand dollars ($57,000), less the sum of twenty-five thousand dollars received by him as insurance on the same, leaving payable by the United States the sum of thirty-two thousand dollars ($32,000).

"To be paid to John S. Shaw, St. Louis, Mo.

"R. J. ATKINSON, *Third Auditor.*"

On the 9th of June, 1864, the amount of said award was paid to the claimant.

In 1869, the claimant made an application to the third auditor to review the award, and allow the further sum of $13,859.90; which that officer refused to do: and his decision in that regard was concurred in by the second comptroller. That sum was, in the application, made up of the above-mentioned balance, claimed as due him on account of stores lost with the boat when she was consumed; and of $13,000, on account of the value of the boat, — which latter claim was made by estimating the

boat's value at $70,000, and allowing thereon $25,000 insurance money paid the claimant, and $32,000 paid him by the government as aforesaid, leaving $13,000 additional on the value claimed to be due to him.

The claimant's amended petition, praying for a recovery of the said sum of $25,000, for the use and benefit of said insurance companies, was, with the leave of the court, filed Aug. 26, 1873.

The court found as conclusions of law, —

1. That, on the facts therein, the "Robert Campbell, Jr.," when destroyed by fire, was employed by the petitioner in the performance of a contract of affreightment, then subsisting between him and the United States; and they are not liable for her value.

2. That the claim of the petitioner against the United States, submitted by him to the third auditor, was not within the jurisdiction or authority of said officer, under the statute of 3d March, 1849; and his action thereon imposed no liability on the United States, and none has been assumed by them.

Judgment was rendered accordingly; and the claimant appealed to this court.

Argued by *Mr. Joseph Casey* for the appellant.

The steamboat was in the military service of the United States by "impressment," and, having been destroyed by inevitable accident, without fault or neglect of the owner, the case is clearly within the acts of March 3, 1849, and March 3, 1863.

The fact of impressment and use creates an obligation to pay, from which an implied contract arises. *United States* v. *Russell*, 13 Wall. 623.

*Mr. Assistant Attorney-General Smith* for the appellee.

The claimant having remained in the possession, navigation, and command of his vessel, the arrangement was, in contemplation of law, a mere affreightment, sounding in a contract, and not a demise. *Reed* v. *United States*, 11 Wall. 600; *United States* v. *Russell*, 13 id. 623.

Being a contractor for the use of his vessel as a transport, neither the claimant nor his property was "in the military service of the United States," within the meaning of the acts of March 3, 1849 (9 Stat. 415), and March 3, 1863 (12 id. 743). *Guttman's Case*, 9 Ct. of Cl. 60.

MR. JUSTICE FIELD delivered the opinion of the court.

If we could import into the findings of the court the facts stated in its opinion and in the brief of appellant's counsel, this case would be presented for our consideration with much greater completeness than at present. It would then clearly appear, that what is termed an impressment of the vessel of the claimant into the military service of the United States was only a notice to its captain from the assistant-quartermaster at St. Louis that the government would *require* its service for a trip to Memphis, Vicksburg, and other points, accompanied with a statement of the *per diem* compensation which would be allowed for its use, and for the subsistence of the men in addition to their wages, and fuel for the vessel; to which notice and service no objection was made by the captain or the claimant. It would also appear, that the claimant entered upon the service with alacrity, and that, in conformity with the terms designated as compensation, his account was rendered to the United States, and paid. Under these circumstances, the transaction could only be treated as a voluntary arrangement, notwithstanding the peremptory tone on the part of the assistant quartermaster-general, with which the negotiation with the captain was opened.

In *Reed* v. *United States*, reported in the 11th of Wallace, the same military officer at St. Louis, the assistant-quartermaster, in June, 1865, applied to the owners of another steamer, to transport supplies from that port to Fort Berthold, on the Missouri; but they declined the service, on account of the lateness of the season. He then ordered them to prepare for the trip, informing them, that, in case of refusal, the vessel would be impressed. They protested; but, under the orders given, put the boat in readiness, received the cargo, and performed the service required. With the order to prepare for the trip, the assistant-quartermaster, as in this case, fixed the *per diem* compensation for the use of the vessel, which appears to have been satisfactory to the owners; for it was received by them without objection. Upon this state of facts the court held, that, though the owners originally objected to the service, they in fact rendered it as matter of contract upon the compensation fixed by the assistant-quartermaster; and that the vessel

having grounded on its return trip, and been destroyed whilst thus grounded by an ice freshet, no liability for its value attached to the United States, under the second section of the act of 1849 (9 Stat. 414), or the fifth section of the amendatory act of 1863 (12 id. 743). The fact that the steamer remained, in performing the trip required, under the control and management of its owners, was considered as conclusive that it was not in the service of the United States, within the meaning of those acts; and that a vessel could only be regarded as in such service when let to the government, and the owners had parted with its possession, command, and management. So long as the owners retained the possession, command, and management of the steamer, the United States were only charterers of the same upon a contract of affreightment, and liable as such, and were not clothed with the character or responsibility of ownership. And it was also held that the adjudication of the third auditor in allowing, in supposed conformity with the acts mentioned, for the value of the vessel lost, could not have any influence upon the decision of the court.

The facts stated in the opinion of the Court of Claims, and by the appellant's counsel in his brief, bring the present case fully within the reasoning and authority of *Reed* v. *United States*. And although the findings in the record are defective in not stating the particulars of the contract, and it is found that the steamer was impressed into the military service, yet it distinctly appears that the terms upon which the vessel would be employed were stated at the time by the assistant-quartermaster, and that the vessel, whilst performing its service, was manned by officers and men engaged by the claimant, — that is, that the vessel was in his possession and under his command and management, and not in the possession or under the command and management of the United States; and that his account with the government for its use and service as a transport, until its destruction by fire, was allowed and paid. We must therefore hold, as was held in the case cited, that whatever the force or coercion may have been which attended the original impressment, as it is termed, the transaction ultimately ended in a contract of affreightment, upon the terms stated by the assistant-quartermaster. As charterers of the vessel under

such a contract, the United States were not liable to the claimant for its loss, and, of course, could not be to the insurance companies which were subrogated to his rights. *Macardier* v. *The Chesapeake Insurance Co.*, 8 Cranch, 39; *The Schooner Volunteer*, 1 Sumn. 551; *The Brig Spartan*, 1 Ware, 153; *Donohue* v. *Kittel*, 1 Cliff. 138.  *Judgment affirmed.*

MR. JUSTICE MILLER dissented.

MR. JUSTICE STRONG did not take part in the decision.