**NATIONAL INTEROCEAN CORPORATION et al. v. EMMONS COAL MINING CORPORATION et al.**

(District Court, E. D. Pennsylvania. March 1, 1921.)

No. 156.

**Admiralty ⊂⊃41—Not essential that libelant be owner of cause of action.**

A libel to recover freight earned under a contract of affreightment and damages for breach of the contract *held* sufficient, though libelant sued as agent for the agents of the owner of the vessel, where the libel disclosed the relations between the parties in interest and it further appeared that by the terms of the contract the freight was payable to libelant.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by the National Interocean Corporation and others, against the Emmons Coal Mining Corporation and others. On exceptions to amended libel and rule on respondents to answer. Exceptions overruled, with leave to respondents to answer.

White & Wetherill, of Philadelphia, Pa., for libelants.

Conlen, Brinton & Acker, of Philadelphia, Pa., for respondents.

DICKINSON, District Judge. The argument of these exceptions was practically a reargument of the whole question. We have so treated it, in deference to the very full brief submitted.

The libel in this case was originally filed in the name of National Interocean Corporation, for and by authority of Erhardt & Dekkers, agents for owners or chartered owners of steamship Augustin. The libel was amended by adding the names of the owners. It is to be observed, as the proceedings now stand, that the National Interocean Corporation is the party libelant, Erhardt & Dekkers are named as the parties for whom the libelant is the agent, and for and on whose behalf and by whose authority the libel is filed, and the owners are brought in merely by way of information as being the owners, of whom Erhardt & Dekkers are agents. In other words, the agent of the agent of the owners files the libel in its own name.

The basis of the cause of action is a contract of affreightment, and involved the services of the ship. If the proceeding were an action at law, governed by the principles of common-law procedure, it is perfectly clear that the action could not be maintained in the form in which it has been brought. Whenever a cause of action at law exists, it exists in some one or more, and the one or more in whom is the cause of action must assert it as plaintiff, and it can be asserted by no one else. Even at law, however, there are instances of exceptions to this general rule, as in del credere commission agencies and in contracts by agents for an undisclosed principal.

The exceptions to this libel are based upon the proposition that the common-law rule pertains in admiralty. The right sought to be enforced by this libel is the right to receive the moneys agreed to be paid for freight, so far as freight has been earned, and the right to recover damages for a breach of the contract of affreightment, so far as the freight was not earned because of the default of the other party to the contract. There would seem to be agreement upon the proposition that the right of action is in the owners of the steamship.

There is something to be said, however, with respect to this. The contract of affreightment is so drawn that there may be some question of whether the contract was to pay the freight to the National Interocean Corporation, to Erhardt & Dekkers, or to the owners of the ship. If in an action at law, counsel in bringing the action misjudged the party in whom was the legal right of action, and thereby named the wrong party as plaintiff, the action would fail. There would be no way at common law by which the consequences of such misjudgment of the proper legal plaintiff could be avoided by naming all of the possible plaintiffs, either in the alternative or jointly, and having judgment ren-

dered in favor of the one or more ultimately determined to be the ones entitled to recover. Proceedings in admiralty, however, so far partake of the nature of proceedings in equity that the importance which the common law attaches to formalities is ignored.

Equity does not concern itself with parties plaintiff and defendant, or who is properly one or the other, but concerns itself wholly with the proper parties to the cause. A chancellor does not in the first instance inquire in whom is the legal cause of action, but only inquires into the substantial fact of whether all who have an interest in the subject-matter are before the court. Essentially the same rule seems to be followed in admiralty. There are often practical benefits which flow from these differences in procedure. The present cause affords us an illustration. If there is any doubt of whether the legal right of action is in one or another, the doubt may be resolved by bringing every one who has an interest in the cause upon the record. All parties being thus before the court, it may be determined in whom is the right of recovery.

It is further permissible in admiralty proceedings for the agent of the real party in interest to file a libel, either in the name and on behalf of his principal or in his own name. Such a proceeding at law would be anomalous, but there is the highest authority for the statement that it is "settled" that a libel in the name of an agent, who has no other relations to the cause of action than such agency, may be brought.

The very capable proctor for the respondent in this case denies this; but, admitting it to be the settled rule in admiralty, the question presented by this record is whether such a libel may be filed, not by the agent of the one in whom is the right of action, but by the agent of that agent. The principle upon which the rulings made proceed seems to be that admiralty concerns itself only with the question of whether the libel is filed and recovery is thus sought with the authority and sanction of the real party in interest. We say this because it has been held that a cause may proceed to final decree, although the libel was filed in the name of the agent, and the authority of the principal was not given until after the action had been brought. We interpret this as meaning that, although the libel is filed in the name of an agent as libelant, recovery may be had for the cause of action set forth, notwithstanding the fact that the right of action is in another, provided that such principal, even as late as the trial, sanctions what has been done in his behalf.

The proctors for the respondent, without conceding this to be the law, contend that the principle applies only in cases in which the question has not been raised until at or after trial. The doctrine is invoked that in admiralty, as at law, a plaintiff must not only have, but must aver, a right to recover, and although it may be true that, if no question of the sufficiency of the averments be raised before trial, the plaintiff then may recover on his proofs, if the question of the sufficiency of the averment is raised, the libel cannot be sustained, unless a sufficient averment be present.

The averments of this libel are criticized, not merely because it is not averred in whom is the right of action, but also because the owners

of the ship are not made parties libelant. The criticism in its facts is well founded. For some reason there is a refusal to name the owners of the vessel as parties libelant, and a persistence in making the National Interocean Corporation the libelant. Why there should be this insistence upon the right of the National Interocean Corporation to thus figure as the libelant, when all procedural difficulties could be so easily removed, does not appear. It is the right, however, of proctors for the libelant to frame the libel in such way as is acceptable to them. This involves the consequence that the libel must stand or fall as they have framed it.

As the charter party may be read as a promise of the respondent to pay to the National Interocean Corporation the agreed freight, and as the parties in the libel are set forth as they are designated in the contract of affreightment, we read the libel as one setting up a cause of action founded upon this contract and belonging to the party libelant according to the designation given in the contract. We think the proceeding may be thus brought, although it may turn out to be that the owners of the ship are the legal, as well as beneficial, owners of the contract. A party to whom the promise was made may maintain an action, and under the rule in admiralty the agent of the real party in interest has a right of action in himself, and may maintain it for the benefit of the parties for whom he acts, upon proof that the action is brought by their authority or with their sanction.

Our conclusion is that the rule in admiralty is that the right of a party to maintain a libel depends upon the fact of whether he has a real interest or represents a real interest. The question of whether he has an interest of one kind or of the other is determined by the trial proofs. The averments of the libel that he has such interest are sufficient to carry the case to trial.

The proctor for the respondent is well within his rights in insisting that the foregoing statement of the admiralty rule is inaccurate. In deference to the request of counsel, we have re-examined all the cited cases, and herewith discuss them at a length which would not otherwise be justified.

The leading case upon the question is the case of Houseman v. Schooner, 40 U. S. (15 Pet.) 40, 10 L. Ed. 653. The comment of the court is that "the pleadings and proceedings are imperfect and irregular." The irregularities were so many that the decree was reversed, but the cause was remitted to the trial court, with instructions to enter a decree in favor of the libelant. The schooner in that case had been stranded. A part of the cargo belonged to J. & C. Lawton, and was shipped to them on their own account. Another part belonged to Porter, the shipper, who shipped them as his own but consigned them to the Lawton firm. Both these parts of the cargo were taken by the salvors. The libel was filed by O'Hara, "as agent for J. & C. Lawton, the consignees." It will thus be noticed that O'Hara had no interest of his own. His sole interest was as agent for the Lawton firm, who owned part of the cargo and were receiving agents for another part of the cargo, which belonged to Porter. The further fact appeared that

the power to act for the Lawton firm was given to the libelant after the libel was filed. Exactly how the question was first raised does not appear, but the points were made that the libelant could not maintain his libel, because the right of action was not in him, and that at least the libel could not be maintained for that part of the cargo which belonged to Porter. With respect to this part of the cargo the libel was filed by an agent of the agents of the owner. It was held, however, that the libelant could recover, and that subsequent authority to file the libel was ratification of what had been before done.

Lawrence v. Minturn, 58 U. S. (17 How.) 100, 15 L. Ed. 58, merely upholds the right of a consignee to sustain a libel in his own name.

The syllabus of McKinlay v. Morrish, 62 U. S. (21 How.) 343, 16 L. Ed. 100, states that a consignee may sue in his own name, or he may sue as agent, or he may sue in the name of his principal.

In The Thames, 81 U. S. (14 Wall.) 98, 20 L. Ed. 804, the mere nominal indorsee of a bill of lading, although not the owner of the cargo, was held to have the right to file a libel.

It was determined in The Vaughan, 81 U. S. (14 Wall.) 266, 20 L. Ed. 807, that the right of a consignee or the indorsee of a bill of lading to maintain a libel was no longer an open question.

The proctor for the respondent has sought to distinguish all of these cases, other than the Houseman Case, on the ground that they were all cases of either a consignee or indorsee of a bill of lading, each of whom is prima facie owner of the cargo, and hence entitled to maintain the action. The effort is further made to get away from the Houseman Case by the statement that it is unsupported by any of the latter rulings and may be considered as overruled by them. We are not in accord with this, however. All the cases recognize Houseman v. Schooner as authority and quote it as such.

Moreover, McKinlay v. Morrish in terms recognizes the right of any one to maintain an action in his own name as agent of the real owner. The libel, it is true, in that case, was by the consignees; but the discussion of the question by the court was such that the writer of the syllabus felt justified in extending the doctrine broadly to the right of an agent to sue in his own name as such. The final test, of course, is in whom was the right of property or right of possession where the cause of action concerns property. The judgment must be rendered in favor of the one who has this right of action, and can only be so rendered when he is a party to the proceedings; but he is in admiralty deemed to be a party to the proceedings, if they be brought by some one who is asserting such right of action on his behalf, whether the assertion be as agent or not.

In the instant case, we have, as has several times been stated, a contract of affreightment. To this contract there are two parties. In any action for a breach of such contract, one of these parties may be made libelant and the other respondent. Any one may file a libel as libelant upon an averment and subsequent showing of authority so to do from the real party in interest.

The exceptions are dismissed, with leave to respondent to answer

over within the time limited by the rules of court. If no answer be filed within 15 days, libelant may enter a decree pro confesso, in accordance with rule 8 of the rules of this court.

With respect to the second motion, this is in effect disposed of by the order already made. Rule 8 of the Admiralty Rules of this court prescribes the time within which an answer may be filed. The pendency of the exceptions justifies extending this time. In disposing of the exceptions, the court may preserve the right of the libelant to the benefits of a decree pro confesso, as we have done.