## GENERAL FOODS CORPORATION v. THE FELIPE CAMARAO et al.

### No. 87, Docket 21123.

United States Court of Appeals
Second Circuit.

Jan. 24, 1949.

Purrington & McConnell, of New York City (Frank J. McConnell, James D. Brown and Paul M. Jones, all of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and John W. R. Zisgen, both of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from an interlocutory decree granting the libellant, General Foods Corporation, recovery of a cargo loss against the carrier, the Republic of the United States of Brazil, trading as Lloyd Brasileiro.[1] The suit was filed on the theory that the carrier was liable for a short delivery under an on-board bill of lading issued by it for the carriage of 10,000 bags of Brazil nuts. The short delivery was conceded. The respondent's defense was that the libellant, by acquiescing in the carriage of the missing goods on another vessel of the respondent which was sunk by enemy action, had waived the breach of contract and was consequently bound by the terms of the original bill of lading which excepted liability for a loss so caused.

The facts are not in dispute. General Foods Corporation (hereafter called the buyer) contracted to purchase 10,000 bags of Brazil nuts from Companhia Industrial do Brazil (hereafter called the seller) and procured an irrevocable letter of credit in favor of the seller providing that a sight draft for the price of the nuts would be honored .if accompanied by an on-board ocean bill of lading showing shipment of the nuts before July 1, 1942. The seller delivered 10,000 bags of nuts to Lloyd Brasileiro in Belem, Brazil, and received in exchange a bill of lading, dated June 27, 1942, which recited that they had been "Received on board" the S.S. Felipe Camarao.

[1] Only an in personam decree was entered, as in rem jurisdiction of the vessel was not obtained.

This vessel sailed from Belem on July 15th and arrived at the port of Pensacola, Florida, on August 13, 1942. When discharge of her cargo was completed on August 19th, it was discovered that the shipment of nuts was 5,674 bags short. In the meantime, the buyer, relying upon the on-board bill of lading which accompanied the draft drawn by the seller against the letter of credit, had paid for the full 10,000 bags. Two days after the shortage was discovered the seller informed the buyer, erroneously as it turned out, that the missing bags were coming forward on another vessel of Lloyd Brasileiro, thought to be the Maua, then due or en route to New York. Because of this information the buyer's agent, Smith, on August 24th, wrote to Lloyd Brasileiro that "we are holding the matter of filing claim in abeyance for the present." By air-mail letter written by the seller on August 27th, the buyer learned that the short-shipped bags were on board Lloyd Brasileiro's steamship Osorio. They had been laden on this vessel on August 14th, before the buyer knew that the Camarao shipment was short. The Osorio sailed from Belem on September 27, 1942 and was sunk by enemy action the following day. After learning of this fact the buyer requested from Lloyd Brasileiro a certificate to the effect that the short-shipped bags of nuts were aboard the Osorio when she was sunk. This certificate was presented by the buyer to its insurance carrier as part of the proof of loss, the buyer being insured in respect to the shipment of 10,000 bags of Brazil nuts against both marine and war loss, and payment in the sum of $147,923.77 was subsequently made by the insurer. Upon the facts the trial judge held that the libellant did not waive any of its rights flowing from the respondent's breach of contract.

■ The real party in interest on the libellant's side of this litigation would seem to be the libellant's insurance carrier; but no point was made that the suit should have been brought in the name of the real party in interest, and of course, the fact that the libellant has received satisfaction from its insurer furnishes no valid ground of defense to the respondent. The Propeller Monticello v. Mollison, 17 How. 152, 15 L.Ed. 68; Federal Forwarding Co. v. Lanasa, 4 Cir., 32 F.2d 154, 157.

■ In the case of Olivier Straw Goods Corporation v. Osaka Shosen Kaisha, 2 Cir., 27 F.2d 129, certiorari denied 278 U.S. 618, 49 S.Ct. 22, 73 L.Ed. 540, we held that the issuance of an on-board bill of lading estops the carrier to deny that the goods described therein have been laden, and makes it liable for a short delivery notwithstanding a provision in the bill of lading which would otherwise have exempted it from liability. It is conceded that this decision is controlling in the case at bar unless the appellant's breach of contract was effectively waived by the appellee.

■ The appellant contends that it was waived. As Professor Williston has pointed out, 3 Williston on Contracts, Rev.Ed. §§ 679, 680, the term "waiver" is ambiguous; it is used to describe, among other situations, a contract for substituted performance. After a breach of the original contract, the parties may agree that one or both of them shall do something different from the performance which the original contract specified. In such a case the agreement is an accord, and, when executed, is an accord and satisfaction. It is this type of "waiver" upon which the appellant relies. As counsel for the appellant explained to the court at the outset of the trial, "the sole issue in this case is whether the General Foods waived the short shipment by the Felipe Camarao by agreeing to accept the balance of its shipment on another steamer."

■ The party relying upon an accord and satisfaction has the burden of proving such claim. Barber & Ross v. White, 56 App.D.C. 236, 12 F.2d 177, 178; Wyatt v. New York, O. & W. R. Co., 2 Cir., 45 F.2d 705, 708, certiorari denied 283 U.S. 829, 51 S.Ct. 353, 75 L.Ed. 1442. The only written communication between the parties was Smith's letter of August 24th which stated:

"* * * I think it proper to notify you we will file claim for any shortage or damage, however, as you have given us to understand you have another ship now at or due New York with at least 5000 bags of this shortage and you have guaranteed us a proportionate delivery from certain uniden-

tified lot of nuts arriving on the Felipe Camarao now being held at Pensacola, we are holding the matter of filing claim in abeyance for the present.

"I might mention your Mr. Robert E. Zumsteg was in Pensacola at the time of delivery, or rather part delivery, of our nuts and he assured me claim would be paid in full."

When this letter was written it was thought that the vessel carrying the short shipment, supposed to be the Maua, was either at New York or about to arrive. Consequently if this letter were claimed to evidence the agreement, although the appellant makes no contention that the letter alone does so, the substituted performance contemplated by Smith could not have been merely "shipment" of the missing nuts and the consideration which Smith desired to obtain for the appellee in return for a surrender of its existing right to damages for the short delivery could not have been merely a promise by the appellant to "ship" the goods on another vessel but must have been actual delivery of them. Indeed, the only reasonable inference from the statement that the claim is held "in abeyance for the present" is that the claim would be presented, if the missing nuts did not arrive.

The appellant argues that the agreement is to be inferred from the inaction and "acquiescence" of the appellee after it learned, about August 28th, that the nuts had been laden on the Osorio. But again we must consider, if there was an agreement, what were its terms and what the consideration to support the claimed surrender of the appellee's right to damages. The foregoing discussion in connection with the letter of August 24th is likewise applicable to the appellee's conduct during the month following August 28th. The letter of August 27th which the appellee wrote to the seller clearly indicates that it supposed that the vessel which was carrying the missing bags had already sailed, and the seller's letter of the same date, which stated that they "were already shipped" on the Osorio, gave no intimation that the vessel was not already at sea. The consideration which the appellee would demand for relinquishment of its right would necessarily be either actual delivery or a promise to deliver the missing

nuts. Hence even if an agreement could be inferred from the inaction of the appellee, the appellant did not perform it. Where an accord is not performed, the promisee has alternative rights; he can enforce either the promisor's original duty or the subsequent agreement. A.L.I.Restatement of Contracts § 417(c).

■ The appellant suggests that it is inequitable to enforce the original duty because it could have taken out war insurance on the Osorio's cargo of nuts had the appellee not acquiesced in such substituted carriage. But as already indicated the agreement, if any, for substituted performance was for delivery, not for mere carriage, of the nuts. The appellee had no knowledge that the carrier would not protect itself by insurance. The carrier was aware that its breach of contract imposed upon it absolute liability for the short delivery and that the appellee's claim was only held in "abeyance for the present" in the hope that the nuts would arrive on another vessel. Hence we think the appellant's failure to place war risk insurance on the Osorio's cargo of nuts should be charged to its own willingness to chance the voyage without insurance and that no estoppel can be raised against the appellee on this score.

The situation at bar is not the same as existed in Farr v. Hain S. S. Co., 2 Cir., 121 F.2d 940, where this court held that a deviation by the shipping company had been waived by the owner of the cargo. There the Tregana which had sailed from Cuba bound for Queenstown was informed en route that she had overlooked a cargo call at the Dominican port of San Pedro. The vessel thereupon made a deviation of 265 miles to call at this port where she stranded. From the statement of facts, 121 F.2d at page 943, it appears that libellant learned of the arrival of the ship at San Pedro "a few hours after she began to lade the Dominican sugar at that port, and allowed her to complete her lading without protest or reservation of any rights arising from the deviation." The cargo owner, aware that the Tregana had turned back to San Pedro, and fully cognizant of the loading operation at the time the sugar was being taken on at this port, was held estopped to claim his rights based on the original fault of the

ship.[2]  That situation is distinguishable from the case at bar where libellant had no knowledge of where the Osorio was and had every reason to presume that the vessel carrying the short shipment was proceeding on her way to the point of destination.

The appellant also argues that the appellee's dealings with its insurance carrier was "a ratification of its waiver" of the right to have had all the nuts carried by the Camarao.  As already stated, "waiver" in the case at bar means that the parties made an agreement for a substituted performance. The foregoing discussion has shown that if any such agreement can be inferred it was an agreement for delivery of the nuts, and was not performed by the carrier.  This necessarily disposes of the appeal and there is no occasion to discuss the so-called ratification of the "waiver."

Decree affirmed.

[2] The English report of this same case, Tate & Lyle, Ltd. v. Hain Steamship Co. Ltd., 55 Ll.L.R. 159, reveals even more clearly how strongly the notion of estoppel figured in the court's holding that the deviation had been waived.  Lord Atkin said at page 174: "He could not reasonably be expected to recall the goods when he discovers the ship at a port of call presumably still intending to reach her agreed port of destination.  There must be acts which plainly show that the shipper intends to treat the contract as still binding.  In the present case, where the charterer procured the ship to be recalled to a San Domingo port for the express purpose of continuing to load under the charter, an obligation which of course only existed in pursuance of the express contract, and saw that the ship did receive the cargo stipulated under the sub-charter provided by persons who had no right to load except under the sub-charter, I am satisfied that there is abundant, indeed conclusive evidence to justify the report of Branson, J., that the deviation was waived by the charterers."