SUN MUT. INS. Co. and others *v.* MISSISSIPPI VALLEY TRANSP. Co.[1]

(*Circuit Court, E. D. Missouri.* September 24, 1883.)

1. COMMON CARRIER—LIABILITY FOR AGENT'S NEGLIGENCE.
     Where A. employs B., a common carrier, to transport goods to C., and B. employs D. to transport them part of the way, and they are lost *in transitu*, while in D.'s possession and through his negligence, B. is liable for the loss to A., or any one who may become subrogated to his rights.

2. SAME—LIABILITY TO INSURER WHO HAS BECOME SUBROGATED TO SHIPPER'S RIGHTS.
     Where a carrier becomes liable to a shipper for the loss of goods, and an insurer pays the shipper the amount of the loss, becomes subrogated to his rights, and sues the carrier for the damages sustained, the carrier cannot avail himself of defenses which might have been interposed by the insurer in an action at law against it.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

3. INSURANCE "FROM ST. LOUIS TO NEW ORLEANS"—LOSS IN HARBOR.
    · Where goods insured " from St. Louis to New Orleans" are lost while be-
    ing transported from East St. Louis to St. Louis, preparatory to a final start,
    by the carrier which has undertaken to transport them to New Orleans, the·
    loss is within the terms of the policy, for the purposes of such a case, the har-
    bor of St. Louis ought to be regarded as extending to the opposite shore.

4. SAME—EVIDENCE.
    In this suit the policies of insurance were not introduced in evidence, and
    secondary evidence in lieu thereof was admitted without objection, except in
    one instance, and the fact of insurance was apparently taken for granted. At
    the hearing in this court it was for the first time objected that the libelants
    were not entitled to recover because they had failed to show that the goods
    lost were insured. *Held* that, under the circumstances of the case, the objection
    should be overruled.

Admiralty Appeal from District Court.[1]

The libelants are insurance companies, and as such insured cer-
tain goods shipped from St. Louis to New Orleans upon the boats of
defendant, and the said goods having been lost in part, and in part
damaged by a collision, they paid the losses to the shippers, and sued
the defendant in admiralty. Decree below for libelants, and defend-
ant appeals. The other facts sufficiently appear in the opinion.

*O. B. Sansum,* for libelants.

*Given Campbell,* for defendant.

McCRARY, J. The defendant, as a common carrier, agreed to trans-
port certain goods described in the libel from St. Louis to New Or-
leans. The goods were laden on defendant's barge New Orleans.
The defendant employed a tug-boat to tow said barge from its moor-
ings at East St. Louis to the levee in St. Louis, there to be taken in
tow by a tow-boat belonging to the defendant, and carried on its way
to its destination. It was while the barge New Orleans was being
towed by the tug-boat, thus hired for the purpose by the defendant,
that a collision occurred, resulting in a loss of part, and in damage
to the remainder, of the goods in question. Libelants having insured
the goods, and paid the losses to the shippers, sued to recover their
damages by right of subrogation, and as to some of the goods by
right, also, of an assignment from the shippers. The evidence shows
that the collision and consequent loss were the result of negligence on
the part of the persons in charge of the tug-boat employed by de-
fendant to tow the barge containing the goods from East St. Louis
to St. Louis.

Anticipating this finding, the counsel for defendant has argued very
fully and ably the question whether this fact fixes a liability upon the
defendant for damages. The contention of counsel is that the rela-
tion of master and servant did not exist between defendant and the
master and crew of said tug-boat, and that, therefore, defendant is not
liable. Conceding that defendant would have been liable as princi-
pal if the tug-boat had been manned or officered and controlled by
it, or had been used by defendant in its regular business, the defend-

[1] See 14 FED. REP. 699, and 16 FED. REP. 800.

ant's counsel argues that inasmuch as the tug was an independent vessel, and operated by its owners for towing vessels about the harbor, it is alone responsible to the shippers for the losses in question.

It appears that the use of tugs for such purposes is customary in the harbor of St. Louis, and it is insisted that the shippers must be held to have employed the defendant with the knowledge that it might, and the expectation that it would, employ that means of moving its barges to the St. Louis landing.

It is no doubt true that no one can, in the absence of contract, be made liable for a breach of duty, unless it be traceable to himself, or to some person who holds the relation to him of agent or servant. And this doctrine has often been applied to cases of collision between vessels where one of the colliding vessels is being towed by another vessel, and is wholly under the control of the officers and crew of the latter. It is held that the owner of the tow, in such case, cannot be held responsible for the negligence of the officers and crew of the vessel by which it is being towed. *Sproul* v. *Hemmingway*, 14 Pick. 1; *Sturgis* v. *Boyer*, 24 How. 110. But these, and other like cases relied upon by defendant's counsel, were actions of tort, brought by the owners of a vessel destroyed or damaged by collision, and do not apply to such a case as the one now before us, where a shipper, or another standing in his place, sues a common carrier to recover damages for the breach of a contract of affreightment. The two classes of cases are altogether different. In the former, the suit is brought by a stranger against a master to recover for the negligence of his servant, and the rule of law applicable, as stated by SHAW, C. J., in *Sproul* v. *Hemmingway*, is "that where a stranger suffers by the negligence or unskillfulness of another's agent or servant, the owner or employer shall stand chargeable for the damage." In the latter, the suit is brought, not by a stranger, but by a party to a contract, and is governed by the well-known rules respecting the duties and liabilities of common carriers.

When a common carrier receives goods into his possession for transportation he becomes a bailee for the shipper, and is responsible for the safe transmission of the goods to their place of destination, whether he keeps them in his own possession or intrusts them to an intermediate carrier on the way. The carrier is employed to transport the goods over the entire route, from the place of shipment to the place of destination, and the measure of his responsibility does not depend upon the question whether the persons who have charge of the goods *en route* are servants or not. If the carrier permits the goods to pass into the hands of another over whom he has no control, and that other shall embezzle or lose them, or permit them to be injured without lawful excuse, the carrier cannot defend upon the ground that such person was an independent carrier, not subject to his direction, having control of his own vehicles.

The character of the carrier as an insurer of the goods carried is

totally inconsistent with the idea that his liability is to be measured by the law of master and servant. To fix the responsibility of a common carrier for goods lost *in transitu*, it is not necessary to prove negligence either on the part of the carrier or his servants, except in cases where the carrier's liability is limited by contract. In those cases the negligence may be shown, and the carrier held liable, notwithstanding such a limitation, upon the ground that he will not be permitted to contract for exemption from the consequences of his own negligence or that of his servants. The duties which the common, carrier undertakes to perform, and not the instrumentalities employed, must be regarded as the criterion of his liability. It is upon this principle that express companies are held to the responsibilities of common carriers, although they have no interest in or control over the conveyances by which the goods are transported.

"It certainly never was supposed that a person who agreed to carry goods from one place to another, by means of wagons or stages, could escape liability for the safe carriage of the property over any part of the designated route by showing that the loss had happened at a time when the goods were placed by him in vehicles which he did not own, or which were under the charge of agents whom he did not control. The truth is that the particular mode or agency by which the service is to be performed does not enter into the contract of carriage with the owner or consignor." *Buckland* v. *Adams Exp. Co.* 97 Mass. 124; Lawson, Carr. § 233, and numerous cases cited.

My conclusion upon this subject is that, as between the carrier and the shipper or insurer, the carrier is liable for the loss of the goods while *in transitu*, though at the time of the loss they were in the possession of a third party, who was transporting them at the request of the carrier; and that, in so far as it is necessary to apply the doctrine of agency, such third party is the agent of the carrier, for whose defaults he is responsible. This case is stronger than those in which the carrier agrees to transport goods beyond the terminus of his line, and in those cases he is held liable for the acts of others to whom he delivers the goods, unless he contracts specially against such liability. Lawson, Carr. § 235, and cases cited.

As to a portion of the goods lost, the defense is interposed .that they were not within the contract of insurance, and that, therefore, although the carrier may have been liable to the shipper, the insurer has no right to recover. This branch of the case arises upon the following facts: The goods were insured "from St. Louis to New Orleans." A part of the goods were in St. Louis, and another part in East St. Louis, on the opposite side of the river. The defendant placed those that were in St. Louis upon the barge in which they were to be transported, and then employed the tug above mentioned to carry the barge, with those goods in it, over to East St. Louis, there to place on board the portion of the cargo in store there, and to return to the St. Louis levee for the final start to New Orleans. After taking on board the barge the goods at East St. Louis, and

starting back across the river, the collision complained of occurred as above stated.

Upon these facts it is insisted that as to so much of the cargo as was taken on board at East St. Louis the insurance company was not liable, because that property was not *en route* from St. Louis to New Orleans at the time of its loss, and it was said that, inasmuch as the insurance company was not liable on its policy, it could not, by paying the loss, acquire any right of subrogation. As to this particular portion of the cargo, there is no assignment from the shipper to the insurance company.

The question whether the voyage from St. Louis to New Orleans had been commenced, within the meaning of the policy of insurance, so as to make the insurer legally liable, may admit of some doubt, though I am, as will presently appear, strongly inclined to the opinion that it had. Waiving, however, this question for the present, I hold that since the insurance company in this case saw fit to waive the objection and treat the loss as within the policy by paying it, the carrier cannot be heard to object, for the reason that its liability to the shipper is clear, and it is in nowise injured by being called upon to make payment to the insurer. Such was the conclusion reached by Woods, circuit judge, in *Ins. Co.* v. *The C. D., Jr.,* 1 Woods, 72, and the doctrine seems to be entirely consonant with justice and equity. It would be contrary to the spirit of the admiralty law, which proceeds upon principles of the broadest equity, to permit the carrier, who is shown to be clearly liable to the shipper, to avail himself of all the defenses which might have been interposed by the insurance company if sued in an action at law upon the policy.

It has been held, upon very analogous principles, that the owner of a vessel upon which he is carrying a cargo for the shippers may, in case his vessel is run into and sunk by another vessel, maintain a suit in admiralty against the offending vessel and her owners for the loss, both of vessel and cargo, *even after an abandonment to the underwriters.*

"The respondent is not presumed to know or bound to inquire as to the relative equities of parties claiming damages. He is bound to make satisfaction for the injury he has done." *Newell* v. *Norton,* 3 Wall. 257; *Monticello* v. *Mollison,* 17 How. 152.

If, therefore, it were conceded in the present case that the voyage insured against had not commenced when the loss occurred, I should hold that the carrier by whose negligence the loss occurred has no interest in raising that question, and it is not one which in any way concerns him. The insurers here are clearly not mere volunteers. It is, however, manifest, I think, that the voyage insured against had commenced at the time of the loss. The harbor of St. Louis may well be regarded, for the purposes of such a case, as extending to the opposite shore of the Mississippi river, and an insurance against loss upon a voyage "from St. Louis to New Orleans" may well be held to

cover a loss occurring, as this did, while the cargo was being brought by the carrier from East St. Louis to St. Louis under the circumstances above stated. The carrier had assumed the control and taken possession of the goods for the purposes of the voyage, and the fact that some were on one side of the river and some on the other is of no consequence.

It is also contended by defendant's counsel that the proof fails to show that the property lost or injured was insured by the libelants. The evidence touching this point is certainly secondary, the policies of insurance not having been introduced in evidence; but, with the exception of the statements made by a single witness, no objection has been raised on this ground until the present hearing. The point is purely technical, for the fact of the insurance seems to have been taken for granted throughout the litigation. If the objection now for the first time made should be sustained, a proper regard for the substantial rights and equities of the parties would require the court to permit the policies to be now-introduced, and that the court can do this at any time before final decree is very clear. As there is no room for doubt as to the fact, the defendant would gain nothing by now insisting upon the best evidence, and I therefore, without a very careful consideration of the merits of the objection, overrule it. The decree of the district court is affirmed.