**THE HALO.**

**GLOBE & RUTGERS FIRE INS. CO. v. CITIES SERVICE CO. et al.**

**No. 224.**

Circuit Court of Appeals, Second Circuit. March 9, 1931.

On Reargument July 10, 1931.

MANTON, Circuit Judge, dissenting.

Bigham, Englar, Jones & Houston, of New York City (T. Catesby Jones and W. J. Nunnally, Jr., both of New York City, of counsel), for appellant.

Frucauff, Robinson & Sloan and Burlingham, Veeder, Fearey, Clark & Hupper, all of New York City (Robert S. Sloan, George J. Johnstone, Eugene Underwood, and Everett Masten, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The steamship Halo, owned and operated by Cities Service Company, undertook to tow

the Crew Levick Company's barge, Crew Levick No. 5, from Key West to Philadelphia. · During the voyage the barge sank and became a total loss. Finding that her loss was caused by the negligence of the master of the Halo, the District Court entered an interlocutory decree in favor of Globe & Rutgers Fire Insurance Company. Thereafter appellant filed its intervening petition, alleging that it had insured Crew Levick Company against perils of the sea "upon the towage and trip expenses of the barge," and had paid the insured the amount of said policy, with interest thereon. Liability of the appellant under said policy was established by court decree in prior litigation brought by the insured.[1] By virtue of such payment appellant claims to be subrogated to the rights of the insured and asserts the right to intervene in this suit and to share with libelant in such recovery as may be made against the Halo and Cities Service Company. For the opinion below, see The Halo (D. C.) 42 F. (2d) 565.

It must be conceded that appellant is not entitled to intervene unless it insured property for the destruction of which appellee must pay the insured, Crew Levick Company; for, if the insured had no right of action, none can pass by subrogation to the insurer. Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 312, 6 S. Ct. 750, 29 L. Ed. 873; In re Columbia S. S. Co., 28 F.(2d) 540 (D. C. N. D. Ohio); Globe & Rutgers Fire Ins. Co. v. Hines, 273 F. 774, 777 (C. C. A. 2). At the threshold of the appeal, therefore, lies the question, what was the subject-matter of the insurance issued by appellant? If it insured the hull of the lost barge, it is entitled to subrogation; if, however, its insurance was on "towage and trip expenses" only, and if the loss of such expenses could not be recovered by the insured from the tort-feasors, the decree below was right.

The appellant contends that, regardless of what the policy covered, the prior litigation between the insured and appellant is conclusive that the insurance was hull insurance, because the pleadings in that litigation so described it. That description, however, was merely a manner of referring to the policy, and the real subject-matter of the insurance was immaterial to the issue there litigated, namely, whether the loss of the barge was due to a sea peril. Upon decision that it was, appellant was bound to pay the amount of its

valued policy, whatever the interest insured. Hence that litigation is of no aid to appellant in the present suit, and the cases it relies upon, such as The Monticello v. Mollison, 17 How. 152, 155, 15 L. Ed. 68, are beside the point.

We must turn to the terms of the policy to determine the subject-matter of the insurance. Appellant used a printed form evidently adapted for hull insurance; but, where the form provided that the insurance was upon "body, tackle, * * * and other furnishings, boilers and machinery," the quoted words were stricken out, and the words "towage and trip expenses" of the barge were inserted. Further down a similar deletion and substitution was made, followed by "Valued at total sum insured on this interest." The amount insured was $7,500, and by a rider ("binding in honour") it was provided "full interest admitted; the policy being deemed sufficient proof of interest." The rider by clause 4 also provided,

"Warranted free from all average, being against the risk of total loss of vessel only. A total loss or constructive total loss, or compromised total loss paid by Underwriters on Hull and Machinery to constitute a total loss under this policy."

While the use of a hull form has resulted in a very confused document, with some provisions remaining undeleted and more appropriate to insuring the hull than any other interest, a majority of the court cannot read the policy without reaching the conviction that the subject-matter of the insurance was not the barge, but "towage and trip expenses," the value of which, admitted to be $7,500, was to be paid in case of a total loss of the vessel.

It is a recognized rule of construction to attribute greater effect to inserted written words than to the printed part of such a contract, because they are the terms presently chosen by the parties, whereas the others are but a general formula. Providence-Washington Ins. Co. v. Bowring, 50 F. 613, 614 (C. C. A. 2). In that case insurance "on advances" was held not to be insurance upon the vessel itself, though printed portions of the policy described generally the body, tackle, apparel, and goods of and in the ship. Judge Wallace gave the matter very careful consideration, and said in his opinion (pages 614, 615 of 50 F.):

"* * * The sensible construction, therefore, of a policy like that now in controversy is that it insures advances against

[1] Decree affirmed without opinion in North British & Mercantile Ins. Co. v. Crew Levick Co., 25 F. (2d) 1021 (C. C. A. 2).

risk from loss of the ship, and the advances thus insured are something independent of and distinct from the ship herself. It is proved that the advances which were intended to be insured in this case were moneys advanced by the managing owners of the vessel in the business of the vessel, and which were in no sense represented by the vessel herself. They consisted largely of premiums for keeping her insured, and they represented other expenditures, such as for coal, other supplies, pilotage, etc., for which the co-owners were liable to account to the managing owners. The amount thus advanced may be deemed the capital of the owners at risk in conducting the business of the ship. As it was fluctuating in amount, the balance at any one time depending upon the difference between expenses and receipts, the sum fixed in the valuation clause was intended to cover the balance which would probably be found existing at any time during the period of the risk. In case of a loss, if the balance proved to be larger than the valuation, the owners would lose the difference; if less, they would gain. It cannot be doubted that the capital invested in carrying on the business of the ship is a proper subject of insurance. As the loss of a ship involves the loss of the money which has been advanced in carrying on her business, to the extent that her owners are deprived of reimbursing themselves from her earnings, the money invested is a marine risk. Expected profits may be insured. Eyre v. Glover, 16 East, 218; Stockdale v. Dunlop, 6 Mees. & W. 224. So moneys expended for the ship's use by the master, his commissions, and his privileges, are subjects of marine insurance. King v. Glover, 2 Bos. & Pul. (N. S.) 206. It may be that an insurance on such advances is, in substance, an insurance upon the earnings of the ship, and that where the freight, 'chartered or otherwise,' is insured on a time risk, an insurance on advances would be double insurance; and it is doubtless true that insurances on advances offer a cover for frauds upon the underwriters, as, when the ship is also insured, the interest of the assured in the safety of the property is diminished."

In British American Assur. Co. v. Law & Co., 21 Can. Sup. Ct. 325, insurance of the owners "on advances upon the body, tackle, etc., of the good barque" was held to be insurance on the vessel itself. But the two cases are not inconsistent and were in fact distinguished at the end of Judge Wallace's opinion on the ground that, in the Canadian case, the advances represented repairs upon the vessel by which her value was enhanced to the extent of the sums advanced. "In such a case the insurance is in the concrete upon the vessel herself." This distinction was accepted by at least one member of the Canadian Supreme Court, being mentioned at the conclusion of Judge Strong's opinion.

In the case at bar no evidence was introduced to show what "towage and trip expenses" the insured had incurred. If such expenses represented money paid out for repairs or reinforcements to fit the barge for the towage trip, the interest insured might properly be deemed insurance on the hull, as in the Canadian case; on the other hand, if such expenses represented, for example, premiums paid out to keep the barge insured during the trip, the result would be otherwise, as in Judge Wallace's decision. The policy being a valued policy, we do not see that any inference as to the nature of the expenses covered by the insurance can be drawn from the amount of the policy. Presumptively, the written words "towage and trip expenses" mean a different interest from printed words of the policy referring to the hull. Without any showing as to what the expenses were, there is no proof that the insured has any right of recovery against the tort-feasors on account of the interest which appellant insured, and consequently it has failed to show any right of subrogation to a cause of action against them.

No case has been cited relating specifically to insurance upon "towage and trip expenses." It is suggested in argument that such a policy is similar to "disbursement" insurance. In International Nav. Co. v. Atlantic Mut. Ins. Co., 100 F. 304, 307 (D. C. S. D. N. Y.), Judge Brown said:

" 'Disbursement' policies are often issued where the hull is fully covered by other policies; they are against total loss only, and are deemed a different interest from a policy on hull, and in case of total loss have no benefit of salvage, such as ordinary policies have. * * *

"The description of the subject insured, namely 'disbursements,' it cannot be doubted, was deliberately chosen to signify a wholly different risk from that upon 'hull, machinery and equipment,' and in order to distinguish the two as wholly different classes of insurance."

Accordingly it was held that disbursement policies were not included as hull insurance for the purpose of computing the proportionate loss to be borne by an insurer of

the hull in a case of partial loss. The decree was affirmed in (C. C. A.) 108 F. 987, certiorari denied 181 U. S. 623, 21 S. Ct. 926, 45 L. Ed. 1033. In Brown v. Merchants' Marine Ins. Co., 152 F. 411 (C. C. A. 9), the policy was on "disbursement and/or increase value," and the insurer was allowed to share in the fund recovered from the tort-feasor. But the "increase value" was a subject-matter as to which the insured could recover from the wrongdoer. As already stated no evidence was presented that Crew Levick Company could recover anything from appellee on account of "towage and trip expenses." Consequently no right to subrogation was established by appellant, and the decree below should be affirmed.

Disposal of the case upon this ground renders unnecessary a discussion of the policy provision "without benefit of salvage."

Decree affirmed.

MANTON, Circuit Judge (dissenting).

The steamship Halo, owned by the appellee, Cities Service Company, undertook the towage of the barge Crew Levick No. 5, in all respects seaworthy, from Key West, Fla., to Philadelphia, Pa. During the voyage, while in the vicinity of Winter Quarter Shoals Lightship, the barge sank and became a total loss. Insurance companies, including the appellant, paid under policies of marine insurance. Among them the Globe & Rutgers Fire Insurance Company, who in this libel sought to recover from the appellee, Cities Service Company, the sum it paid, by way of subrogation to the rights of the Crew Levick Company because of the marine faults resulting in the loss of the barge. The District Court found the appellee liable and referred the question of damages to a commissioner. Thereupon the appellant, which had issued its policy on account of towage and trip expenses on the Crew Levick No. 5, petitioned that all parties be cited to determine the respective rights of the Globe & Rutgers Fire Insurance Company and appellant, and that the court decree to petitioner its damages. The petitioner paid $7,500 under its policy toward the loss. It claimed equal protection with the subrogated rights of the Globe & Rutgers Fire Insurance Company, since such rights arose and came into being simultaneously.

The answer of appellee admitted the issuance of the appellant's policy "against perils of the sea and other perils in said policy mentioned." It admits the loss by the perils of the sea and shell fire of a United States Coast Guard cutter and that appellee was obliged to sue and did so successfully establishing that the loss was caused by perils of the sea.

The amended petition and answer framed the issues upon which the court below found that the appellant's policy was not an insurance on the hull but upon towage and trip expense and therefore there could be no recovery by petitioner in its enforcement of claimed subrogated rights. The petition was dismissed on the merits.

From an examination of the policy, it appears to be called a towage and trip expense risk. That phrase is typed in the valuation clause. But the insurance company covenanted in the policy to assume risks as follows:

"Touching the adventures and perils which we, the said assurers, are contented to bear and take upon us, they are of the seas, men-of-war, fire, enemies * * * takings at sea, arrests * * * or other causes of whatsoever nature arising either on shore or otherwise, causing loss of or injury to the property hereby insured. * * *

"This insurance also specially to cover (subject to the free of average warranty) loss of, or damage to hull or machinery, through the negligence of master, charterers, mariners, engineers, or pilots, or through explosions. * * * "

Moreover it insured against collision damages, made provision for general average and salvage charges, and contained all the usual provisions of hull insurance. A rider or slip was attached which provided:

"This insurance also specially to cover total loss or constructive total loss of hull or machinery through negligence of master * * * or through any latent defect in the machinery or hull, or from explosions, riots, or other causes of whatsoever nature."

The trip was from Key West to Philadelphia. We may take notice that the towage and trip expense could not be the amount of the insurance, $7,500.

In the suit for the loss of the hull against the appellant on this policy, it was insisted that appellant's policy covered this marine loss, and appellant, as insurer, paid the loss. Under authoritative and other decisions, it is clear that, even though named as a towage and trip expense policy, it may still be a policy on the hull. The Monticello v. Mollison, 17 How. 152, 15 L. Ed. 68; British & Foreign Marine Ins. Co. v. Kilgour S. S. Co., 184 F. 174 (D. C. S. D. N. Y.); Pearse v.

Quebec S. S. Co., 24 F. 285 (D. C. S. D. N. Y.). But by the terms of the policy indicating the risk which was assumed by this insurance, it covered the loss of the barge sustained in the manner described.

In British America Co. v. Law, 21 Canada Sup. Ct. Rep. 325, the suit was brought on an insurance policy covering "advances." The rest of the printed matter was applicable to the hull. The insurer defended on the ground that the insured had no insurable interest inasmuch as he was the owner of the vessel; the insurance was on advances to his own ship. The court conceded that the insurance "on advances" in such a situation would be insurance on sums irretrievably spent, and hence not. at risk, and that such insurance would be bad as a wager. But the court held for the plaintiff in the suit on the policy holding either (a) that "advances" were meaningless and might be disregarded and that the policy was on the hull; (b) that the phrase "on advances" might be read as meaning that having advanced or expended money upon the ship in repairing or refitting her; they were therefore led to make the insurance in order that the enhancement in value of the vessel caused by such expenditures might be covered by such insurance; or (c) the words "on advances" might be treated as a specification of a special interest which the assured supposed had entitled them to insure the ship and not as limiting the insurance to advances. Read in this way, they would be immaterial, but their interest as owners entitled them to insurance. If none of these constructions were permissible, there would be no alternative but to give effect to the policy and reject the words "on advances" as repugnant to other parts of the policy and at variance with the clear intent of the parties to insure the ship for the shipowner. The court so held. This court in Booth-American Shipping Co. v. Importers' & Exporters' Ins. Co., 9 F.(2d) 304, 305, considered a policy on "disbursements and/or profits on freight," and said:

" 'Disbursements' cannot, in any event, be read literally; if so, the policy would be a gaming contract. It can therefore mean only some interest at risk which the assured acquired by the payments. This was indeed the meaning given it in Currie et al. v. Bombay Insurance Co. * * * We think it covers whatever was so acquired; that is, whether the assured was a charterer or an owner. If an owner, then the disbursements will usually outfit the ship, or help to clear her for her voyage; if they make her a more efficient carrier, the owner must intend to cover that added value."

There was nothing here at risk which was an insurable interest. Sums expended for towage or trip expenses are irretrievably gone, irrespective of whether the vessel sinks. or not. Therefore there was in no sense an interest of the insured at risk as such, and what is meant to be insured must be either, first, the physical values added to the vessel by the expenditures, or the hope of recoupment through the operation of the vessel. In the first case, the insurance is clearly on the ship, and in the second on the freight. Both these items are proper elements of collision damages, and the insurers should have subrogation.

It was hull insurance which the appellant contracted to assume, and as such insurer it paid the loss. If the loss paid was for hull damage, this appellant is in the same position as the Globe & Rutgers Fire Insurance Company, which concededly paid for hull loss. Appellant may share in the subrogated owner's right with its coinsurers. Brown v. Merchants' Marine Ins. Co. (C. C. A.) 152 F. 411.

Nor is delay in payment or a refusal to participate in the proceedings to recover damages from the owner a ground for excluding them from participation. Subrogation results by operation of law from the act of payment of the loss; it does not depend on the voluntary act of the assured. St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S. 223, 11 S. Ct. 554, 35 L. Ed. 154; Phœnix Ins. Co. v. Erie Co., 117 U. S. 312, 6 S. Ct. 750, 753, 29 L. Ed. 873.

The policy contained the provision "without benefit of salvage," and appellee contends that appellant thereby waived its right to subrogation. "Without benefit of salvage" is found on .the slip or rider attached to the policy. Appellee in its contention relies upon Phœnix Ins. Co. v. Erie Co., supra. There the Supreme Court said:

"From the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the assured the amount of the indemnity agreed on between them, is entitled, by way of salvage, to the benefit of anything that may be received, either from the remnants of the goods, or from damages paid by third persons for the same loss. But the insurer stands in no relation of contract or of privity with such persons. His title arises out of the contract of insurance, and is derived from the assured alone, and

can only be enforced in the right of the latter. * * * In any form of remedy, the insurer can take nothing by subrogation but the rights of the assured."

The salvage as referred to in the phrase of this policy is the right to that which physically remains of the insured vessel. Smith v. Reynolds, 1 H. & N. 221, 25 L. J. Ex. 337; DeMattos v. North, etc., L. R. 3 Ex. 185; Lucena v. Craufurd, 2 Bos. & Pul. (N. R.) 269. But it does not include the right of subrogation to recover for faults resulting in the loss. Brown v. Merchants' Marine Ins. Co. (C. C. A.) 152 F. 411; La Champagne, 53 F. 398 (D. C. S. D. N. Y.); The Livingstone, 130 F. 746 (C. C. A. 2). The right to bring the suit against the towing vessel did not pass as a result of the abandonment of the vessel, and such right is acquired only upon the doctrine of subrogation, which is an entirely distinct legal right from that of the abandonment. The underwriters are entitled to reimburse themselves for the sums which they have actually paid the assured. There is a distinction between abandonment of a vessel and subrogation. Underwriters may be entitled to the vessel sunk or stranded and to all the rights accruing after they become owners which may include a right to all collateral remedies and advantages of the assured. They can, if they so contract, relinquish some of these. This is all for the purpose of reducing the loss which they have sustained by payment on the contract of insurance. And the phrase "without benefit of salvage" here means that the insurance company waived the right to recover the vessel itself or otherwise dispose of the wreck. It does not include, however, the right to sue third parties as a collateral remedy.

The appellee, found to be the wrongdoer, should not escape liability because of the willingness of the insurance company to waive its right to salvage as such. The petition for intervention should have been sustained. I therefore dissent.

### On Reargument.

SWAN, Circuit Judge.

Upon the handing down of our opinion affirming the decree below, the appellant petitioned for a reargument on the ground that we had erroneously stated that "no evidence was introduced to show what 'towage and trip expenses' the insured had incurred." A reargument was granted limited to three questions, of which only the first need be stated: "Does the evidence of expenditures for stores, repairs, hawser, etc., mentioned in appellants' petition for rehearing entitle the appellant to intervene?"

Exhibit A, which is a printed copy of the record on appeal in the suit upon its policy of insurance brought by the insured against the present appellant, discloses bills for ice, kitchen utensils, food, a hawser, and labor for making a thimble and repairing a winch, altogether totaling some $800. These bills are addressed to Porter Dock Company, and most of them add "a/c Barge Crew Levick." The testimony is that Porter Dock Company at Key West, Fla., was instructed by McAllister Bros., who were managing agents for the steamship Halo, to see that the barge had proper equipment aboard and everything in shape to be towed north by the Halo. The Porter Dock Company paid the bills. There is no proof that they paid them on behalf of the barge owner. It is quite conceivable that the Halo supplied at its own expense the towing hawser as well as the food and utensils for the two men, members of the Halo's crew, who manned the barge during the trip. We do not know the terms of the towing contract. Hence we think the appellee is right in its contention that there is no proof that these bills represented expenses incurred by the insured.

But, even if it be assumed that these expenses were incurred by the insured, it would not follow that they were the subject of the appellant's policy. These bills and the testimony that the goods they represented had been delivered on the barge were offered in the suit upon the policy to prove that the barge was seaworthy when she left Key West, not to show trip expenses intended to be covered by the policy. That the plaintiff had an insurable interest had been conceded at the outset of the trial. No issue was made as to what the interest was. But, as pointed out in our former opinion, the policy was evidently intended to cover an interest different from the hull and its equipment, for the printed words "body, tackle, apparel, stores," etc., were stricken out and "towage and trip expenses" were substituted. In British American Assur. Co. v. William Law & Co., 21 Can. Sup. Ct. 325, the policy was "on advances upon the body, tackle," etc. of the boat, and this was held to be insurance on the vessel itself. In the case at bar, however, the "expenses" insured are not stated to be upon the body or equipment of the barge; on the contrary, those words were deleted. Therefore we think the purchase of such gear

and stores as would be covered by hull policies was not intended to be described by "towage and trip expenses." We may surmise that that phrase was meant to cover such items as the towage hire to be paid the Halo and the premiums on hull insurance for the trip; but we are satisfied it did not cover the purchase of equipment ordered by the Porter Dock Company even if such purchases be assumed to have been made on behalf of appellant. A dictum to the contrary in our former opinion must be retracted. Hence, even if the Crew Levick Company could have recovered from the appellee for the loss of the hawser, etc., the appellant shows no ground for intervention, for it "may not be subrogated to a recovery for a loss against which it did not insure." Standard Marine Ins. Co., Ltd., v. Scottish Metropolitan Assur. Co., Ltd., 283 U. S. 284, 51 S. Ct. 371, 373, 75 L. Ed. 1037.

Accordingly a majority of the court adheres to its former opinion.

HICKS, Circuit Judge, dissenting.