**STATE of Delaware**

v.

**Mark R. FARRIER,[1] Defendant.**

**No. 0605027512.**

Family Court of Delaware.

Submitted: Nov. 1, 2006.

Decided: Jan. 25, 2007.

---

Marilyn Martin, Esquire of the Department of Justice, Georgetown, Delaware, for the State.

1. Pseudonyms are used to protect the privacy of the parties.

Dean C. Johnson, Esquire of the Office of the Public Defender, Georgetown, Delaware, for defendant.

HENRIKSEN, J.

## OPINION

This is the Decision and Order from the restitution hearing held November 1, 2006, following a plea entered June 28, 2006 by the above-named juvenile to charges of Burglary–2nd, Conspiracy–2nd, Theft Over $1000, and Burglary–3rd. The restitution hearing involved the losses of a Pep–Up convenience store located on Route 1 near Rehoboth Beach, Delaware.

At the restitution hearing, the Court heard the testimony of Natalie Shaffer, the manager at Pep–Up. Ms. Shaffer's testimony convinced the Court that the store suffered legitimate losses resulting from the crime totaling $2,021.70, comprised of the following:

| | |
|---|---|
| Stolen cigarettes (retail value) | $1,574.70 |
| Reset burglar alarm | $ 107.00 |
| Repair broken glass window | $ 340.00 |

The Court does not believe the victim should be held to the initial preliminary estimates of the cigarette loss given to police officers almost immediately following the occurrence of the crime, but finds more reliable the amount of the reported loss which resulted from an accurate inventory being taken when the business reopened in the morning.

The defendant, through counsel, questioned whether the victim was entitled to recover their loss at retail value, which included their lost profit, instead of at cost. The Defendant also questioned whether he should be required to pay restitution that was covered under any of victim's insurance. The Attorney General's office advised the Court after trial in a letter dated December 14, 2006 that the victim had

insurance that would cover the loss over and above the $1,000 deductible of Pep–Up's policy, but that Pep–Up chose not to submit the loss to their insurance provider.

## LAW AND REASONING

■ Delaware Code Ann. tit. 10, § 1002 clearly states that, *"No child shall be deemed a criminal by virtue of an . . . adjudication of delinquency . . . "* Section 1002 also emphasizes that, *"In [the Family Court] the nature of the hearing and all other hearings shall be in the interest of rather than against the child."*

While making decisions that foster the best interests of children, the Delaware Legislature also intended for the Judges of the Family Court to protect the victims. Following an adjudication in which the Court declares that a child is delinquent, the Court may *" . . . order a child to make monetary restitution in whole or in part as the Court determines for out-of-pocket costs, losses, or damages caused by the delinquent act of the child where the amount thereof can be ascertained."* [2]

Family Court Criminal Procedural Rule 32(g) enunciates the guidelines the Court follows when considering an Order for restitution. Those guidelines are as follows:

**Rule 32. Sentence and judgment.**

(g) *Restitution.* The Court, to provide a uniform and equitable approach in considering an order for restitution as part of any sentence, shall adhere to the following guidelines:

(1) restitution is discretionary and its imposition shall be governed by statute;

(2) restitution should be ordered when the victim has suffered an actual monetary loss through damage, de-

**2.** Del.Code Ann. tit. 10, § 1009(c)(5) (1949).

struction, or theft of property, or personal injury;

(3) restitution should cover the victim's own out-of-pocket expenses and losses as a first priority with *losses covered by insurance given the lowest priority;* (Emphasis added)

(4) the Victim Loss Statement shall request the victim to complete the statement setting forth *market value,* as opposed to replacement value or cost, with respect to damage, destroyed, or lost property, and to include a receipt, receipted invoice, canceled check, appraisal, or other verification of the loss claimed; (Emphasis added)

(5) the Court must consider the ability of the person from whom restitution is sought to pay such restitution in determining whether to order restitution and, if so ordering, in determining the amount of restitution and the schedule of payments; and

(6) where there is disagreement as to the amount of the loss sustained, the State shall have the burden of proving the amount of loss by a preponderance of the evidence.

The Family Court Rule on restitution tracks very closely the parameters suggested by the Delaware Supreme Court in the case of *Pratt v. State.*[3]

Using the above guidelines, the Court finds it appropriate in this particular case to follow the general rule of using fair market value to establish the amount of the loss. The fair market value of the loss is $2,021.70.

■ The next question is whether the amount of restitution the juvenile is or-dered to pay should be reduced by the amount the victim is able to recover from the victim's own insurance company.

The collateral source rule has been applied in America at least since 1854 in a case decided by the United States Supreme Court.[4] In a case involving a collision on Lake Huron, where a schooner was struck and destroyed through the negligence of a steam boat, the United States Supreme Court held that the steam boat company could not avoid its responsibility to pay damages where the schooner had already received a recovery from the schooner's insurance company. In a 1964 Opinion rendered by the Delaware Supreme Court in the case of *Yarrington v. Thornburg,* the Court stated that the collateral source rule was, *"firmly embedded"* in Delaware law.[5] Although the Delaware Supreme Court in *Yarrington* recognized the existence of the collateral source rule in Delaware, the Decision also reflects an exception to the collateral source rule which holds that the victim's recovery against the torte feasor should be reduced by the amount of insurance paid to the victim by the *torte feasor's* insurance company.

In the present case, the juvenile, the torte feasor, obviously did not have his own insurance that would pay for damages caused by his criminal activity. Any insurance which would reduce the victim's loss, similar to the situation in the previously cited United States Supreme Court case in *Monticello Propeller v. Mollison,* had been purchased by the victim. Thus, if we simply look at who acquired the insurance, the juvenile in the present case before the Court should pay the full amount of the

---

**3.** *Pratt v. State,* 486 A.2d 1154 (Del.1984).

**4.** *The Propeller Monticello v. Mollison,* 58 U.S. 152, 17 How. 152, 15 L.Ed. 68 (1854).

**5.** *Yarrington v. Thornburg,* 205 A.2d 1 (Del. 1964).

victim's loss. That amount would be $2021.70.

More recently, the collateral source rule in Delaware has been upheld by our Delaware Supreme Court in the 2005 case of *Onusko v. Kerr.*[6] There the Court ruled that the victim in an automobile collision should be entitled to seek the full amount of the medical services that were billed by the physician for services rendered to the victim, rather than the lesser amount that the physician was willing to accept where the victim did not have health insurance.

In 2005, the Delaware Supreme Court again upheld the collateral source rule in a medical malpractice case where the victim's private medical insurance carrier, Blue Cross, had contracted to accept reduced payments of the medical bills as payment in full. In this case of *Mitchell v. Haldar*[7], the victim-patient was entitled to seek compensation for the reasonable value of the medical services necessitated by the doctor's negligence, rather than limiting the victim's recovery against the doctor to the amount that the victim's health care providers contracted with Blue Cross to accept as payment in full.

In the *Haldar* decision, Justice Holland, delivering the Opinion for the Court, outlined the history of the collateral source rule in the United States as well as in Delaware. Therein he cited another Decision of the Delaware Supreme Court, stating that under the collateral source rule, *"A torte feasor has no right to any mitigation of damages because of payments or compensation received by the injured person from an independent source."*[8] Justice Holland noted, *"The rationale for the collateral source rule is based upon the quasi-punitive nature of torte liability."*[9] Justice Holland quoted from two Virginia Supreme Court Decisions in explaining the competing principals under the collateral source rule:

*"The collateral source rule is designed to strike a balance between two competing principles of torte law: (1) A plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) A defendant is liable for all damages that proximately result from his wrong. A plaintiff who receives a double recovery for a single torte enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrong-doer."*[10] *Thus, the torte feasor is required to bear the costs for the full value of his or her negligent conduct even if it results in a windfall for the innocent plaintiff.*[11]

Following the logic of the collateral source rule thus far set out in this opinion, the juvenile defendant in this action should be required to pay the full amount of the victim's loss even though the victim had insurance which could cover all but $1,000 of the victim's loss. But as previously noted, our Delaware Legislature requires the Court to view the delinquency action in

---

6. 880 A.2d 1022, 1023 (Del.2005).

7. *Mitchell v. Haldar*, 883 A.2d 32 (Del.2005).

8. *Mitchell v. Haldar, supra.*, citing *State Farm Mut. Auto. Ins. Co. v. Nalbone*, 569 A.2d 71, 73 (Del.1989).

9. *Mitchell v. Haldar*, 883 A.2d 32, 38 (Del. 2005).

10. *Acuar v. Letourneau*, 260 Va. 180, 531 S.E.2d 316, 323 (2000), quoting *Schickling v. Aspinall*, 235 Va. 472, 369 S.E.2d 172, 174 (1988).

11. *Id.*

the interest of, rather than against, the child.[12] The Delaware Legislature has also indicated that the Court may order the delinquent to pay restitution for all or part of the damages.[13] Given these directions from our Delaware Legislature, and also following the guidelines of the Family Court Criminal Procedural Rule 32(g), the Court in ordering restitution against a juvenile, by statutory and court rule exception to the general collateral source rule, takes into account the victim's available insurance, as well as the ability of the juvenile to pay the amount ordered. Nowhere, however, does the Court find it stated that the Court is required to offset any claim of damages by the exact amount of the insurance paid or available to the victim on the claim.

The victim in this case suffered a loss of $2,021.70. Had it submitted its claim to its insurance carrier, the victim likely would have suffered a net loss in the amount of its deductible, $1000. However, the Court recognizes that victims with insurance, for various reasons, some of them being financial in the form of the expectancy of increased future rates, may justifiably not always submit their legitimate claims to their insurance company for payment. The juvenile is a healthy individual of working age capability.

The Court, weighing all of the factors previously noted, therefore finds that it is reasonable to require the defendant to pay restitution in the sum of $1,500. This amount shall be payable to the Clerk of the Family Court in installments of $200 per month, with first payment due within 15 days of the mailing date of this order, and with each subsequent consecutive monthly installment of $200 payable on the same day of each month thereafter until fully paid.

IT IS SO ORDERED.

---

**12.** 10 Del.Code, § 1002.

**13.** 10 Del.Code, § 1009(c)(5).