KITCHENS, Justice,
Concurring in Result Only:
¶ 29. I agree with the majority that “the circuit court correctly applied the law *249 when it refused to admit evidence of Mitchell’s health insurance and Medicare coverage.” Maj. Op. at 247. But in my judgment, that correct application stemmed from our long-held principle that parties may not adduce evidence that damages have been mitigated by collateral-source payments. I can endorse neither the abrogation nor the weakening of that wise rule. Therefore, I join today’s judgment in result only.
¶ 30. Let us be under no illusions regarding the impact of today’s pronouncement. The majority opinion’s aim is no “narrow purpose,” Maj. Op. at 245, and Mississippi’s longstanding collateral-source rule does not “remain[] unchanged” by today’s judgment. Id. This decision makes access to previously forbidden evidence of collateral-source payments exceedingly effortless and overlooks major implications that may open the door to the rule’s demise.
¶ 31. As early as 1854, the U.S. Supreme Court recognized the principle, long ago crafted of necessity by English courts, see Yates v. Whyte, 4 Bing. N.C. 272, 1838 WL 3741 (1838), as “a doctrine well established....” Monticello v. Mollison, 58 U.S. 152, 155, 17 How. 152, 15 L.Ed. 68 (1854). “The contract with the insurer is in the nature of a wager between third parties, with which the trespasser has no concern.” Id.
¶ 32. The policy considerations girding the collateral-source rule are legion, but perhaps chiefly ranked among them all is the recognition that such evidence simply is not relevant upon the inquiry as to whether one party has wronged another. Until recently, this Court has held consistently that the collateral-source rule does not yield even to considerations of a witness’s veracity. See Ethridge v. Goyer Co., 241 Miss. 333, 338, 131 So.2d 188 (1961) (evidence of collateral-source payments not permitted even “to contradict testimony that the plaintiff gave in the trial ... ”). See also Vance v. Hervey, 253 Miss. 751, 755, 179 So.2d 1 (1965) (rule of Ethridge is “sound law”).
¶ 33. To the credit of my colleagues with whose judgment I part ways today, the decision in the instant case does not automatically allow admission of such evidence. Rather, today’s judgment purports to grant its blessing only upon “evidence of collateral source payments ... introduced for the purpose of impeaching false or misleading testimony....” Maj. Op. at 17. Were such evidence admissible in a vacuum, then I would concur fully. But any contention that such evidence will not be procured with the intent and effect of informing jurors that a plaintiffs damages were covered by insurance is not rooted in reality. Indeed, one would find impossible the task of suggesting with sincerity that some attorneys will not assiduously ferret out such evidence at every opportunity for precisely that purpose. The majority makes available an outright circumvention of the collateral-source rule with the simple, possibly pretextual, question of whether the plaintiff in any given case has suffered personal financial hardship. If the answer is yes, as it almost always would be, then the examining attorney has positioned his or her client to offer proof of collateral-source payments.
¶34. I find the majority’s reliance on our decision in Busick v. St. John, 856 So.2d 304 (Miss.2003), to be misplaced. In Busick, this Court noted the existence of an impeachment exception in some jurisdictions but ultimately avoided the collateral-source issue by correctly noting that the issue had not been preserved for appellate review by way of a timely objection *250 at trial.[7] Id. at 309-310. Busick did not, either explicitly or implicitly, create the rule of law to which the majority purportedly adheres. If Busick stands for any broadly applicable principle of law at all, it is that evidence of collateral-source payments survives appellate review only when the aggrieved party did not lodge a timely objection thereto. Id. at 310.
¶ 35. One of the central policy foundations supporting the collateral-source rule is that any alternative would punish parties with the foresight and care to protect themselves and others by carrying health coverage. Today’s decision has great potential to punish such foresight.
¶ 36. This decision also ignores the implications presented by subrogation, which is contractually required by most contemporary health insurance policies and plans, as well as by government programs such as Medicare and Medicaid, and by our state’s workers’ compensation statute. When all or some portion of a plaintiffs claim-related medical costs have been paid by third parties such as these, a plaintiff who is awarded money damages in civil litigation must reimburse that third party from his or her recovery of those same components of claim-related damages.
¶ 37. In a trial, it likely would benefit the tortfeasor for jurors to get the impression that the plaintiff was attempting to “double dip” by asking for a verdict that included medical costs already paid on the plaintiffs behalf by a third party, such as the plaintiffs health insurance carrier. For jurors to be so misled, whether unintentionally or otherwise, would be patently unfair, and the prevention of this sort of injustice provides another compelling reason to maintain inviolate Mississippi’s well-established collateral-source rule. Justice would best be served by retention, without exception, of this wisely conceived, time-tested rule that precludes jurors from being informed that a plaintiffs medical costs had been defrayed, in whole or in part, through third-party payments, unless, of course, we also should hold that, if a jury were given such information, a plaintiff *251 would then be allowed to make the jurors privy to the realities of subrogation.
¶ 38. Similarly, it would seem only fair, in the interest of full disclosure, to inform jurors of defendants’ applicable liability insurance so that they would know that a defendant would not be caused to suffer personal financial hardship by an adverse verdict. By analogy to today’s decision, a plaintiffs attorney could ask a defendant, “Would you suffer personal financial hardship if you had to pay the plaintiffs medical bills, lost income, and other proven damages?” This would open the door to the plaintiffs being able to reveal to the jury that the defendant would be relieved of personally paying those damages because they would be paid by funds from a collateral source, namely the defendant’s liability insurance carrier, up to the limits of the defendant’s applicable coverage. It is apparent that the majority’s tinkering with this venerable old rule may have ramifications far beyond its application to the instant case.
¶ 39. Even without the policy concerns that support my conclusion, I still would not be comfortable joining this decision because the majority does little to explain how and when evidence of collateral-source payments may be adduced. Notwithstanding the majority’s contention that the collateral-source rule “remains unchanged” by its decision, Maj. Op. at 245, “the purpose of impeaching false or misleading testimony” at which today’s judgment is aimed is an exceedingly vague standard. Id. Undoubtedly, some trial courts will apply this new rule narrowly and allow evidence of collateral-source payments only when the plaintiff has stepped squarely in a hole of its own digging. Conversely, other trial judges will enthusiastically leap astride the horse loosed from its stable by today’s majority and heap heretofore forbidden evidence upon a plaintiffs most benign references to financial hardship.
¶ 40. To the extent that my friends in the majority contend that my conclusion violates evidentiary concerns and Biblical concerns alike, see Conc. Op. at 248, n. 5-6 (Dickinson, J.), my colleagues, for whom I have the deepest respect, have reached their conclusion by way of an oversimplified view of the real-world effects today’s decision will have. The Court reaches its conclusion with insufficient consideration of the practical implications thereof, the inevitable real-world effects thereof in this state’s trial courts, and the unfair disadvantage at which plaintiffs are placed thereby. The fullness of today’s judgment is a slippery slope upon which I am compelled not to step. Therefore, I concur in its result but nothing more.
WALLER, C.J., JOINS THIS OPINION IN PART.

. By arguing, on one hand, that today's judgment is rooted firmly in prior precedent but, feeling, on the other hand, the need to overrule prior case law expressly, the majority appears to concede, at the very least, that the relevant language in Busick on which today’s decision rests is not emphatic. I agree. However, whatever direction can be gleaned from the ambiguity strongly suggests that, ultimately, the Busiclc Court rejected the encroachment upon the collateral-source rule adopted today. Paragraph 16, in which the Busick Court spoke its final words regarding the issue now before us, finds no error in the impeachment evidence presented in that case, but that paragraph does not indicate clearly whether the conclusion is reached because of a procedural bar or because of a newly recognized exception. See id. at 310. Paragraph 15 is clearer, though. It begins by reiterating Mississippi's long-held recognition that the collateral-source rule stands without exception. Then-Presiding Justice Smith briefly, almost casually, mentioned that some states have recognized this single exception. Id. at 309-310. And then, as quickly as it mentioned this point, the majority dropped the issue from its discussion. The Busick opinion did not suggest that the exception was being adopted, that it should be adopted, or even that existing Mississippi law appeared to support its adoption. Indeed, the only pronouncement of Mississippi law therein was the recognition that this Court has never permitted any exception to the collateral-source rule. Id. at 309. Also, to the extent that the Busiclc Court found permissible evidence of collateral-source payments, it so found only under the unusual set of facts of that case, in which the plaintiff's attorney asked for a limiting instruction in lieu of requesting a mistrial. Id. at 308-09. For these reasons, my view is that the portion of Busick on which today’s majority opinion depends is dictum and limited to that case’s facts. I concede that this conclusion alone does not foreclose the Court from proceeding down the trail embarked upon today, but we should at least recognize that we do so without regard for the principles of stare decisis.