**A. L. HOLDEN, Irene J. Koezly, Robert M. Paisley, Robert J. Paisley and Craig Sim, co-partners, doing business under the name and style of R. L. Pritchard & Company**

v.

**S.S. KENDALL FISH, her engines, boilers, etc., and Lykes Bros. Steamship Company, Inc.**

No. 4233.

United States District Court
E. D. Louisiana.
Dec. 20, 1962.

Henry J. Read, Montgomery, Barnett, Brown & Read, New Orleans, La., for plaintiffs.

Benjamin W. Yancey, Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., for defendant.

ELLIS, District Judge.

**1**

At all of the times mentioned in the libel, libellants A. L. HOLDEN, IRENE J. KOEZLY, ROBERT M. PAISLEY, ROBERT J. PAISLEY and CRAIG SIM were individual co-partners doing business under the name and style of R. L. PRITCHARD & COMPANY, with their principal office at 90–96 Wall Street in the city and state of New York, engaged in business as importers of sisal.

**2**

At all times referred to in the libel, respondent LYKES BROS. STEAMSHIP COMPANY, INC., was and now is a corporation organized and existing under the laws of one of the states of the United States, engaged in business as a common carrier of merchandise by water for hire, and at all of said times respondent operated and controlled the SS KENDALL FISH as a general ship in the common carriage of merchandise by water for hire.

**3**

On or about the 11th day of May, 1952, at the port of Dar Es Salaam, Tanganyika Sisal Marketing Association, Ltd., delivered to respondent and to the SS KENDALL FISH 3462 bales of sisal for carriage aboard the said vessel to New Orleans, Louisiana; on or about May 13, at the port of Tanga, the same shipper delivered to respondent and to the SS KENDALL FISH 934 bales of sisal for carriage by said vessel to New Orleans, Louisiana; and on or about May 28, at the port of Tanga, the same shipper delivered to respondent and to the SS KENDALL FISH 1439 bales of sisal for carriage aboard said vessel to New Orleans, Louisiana. The carriage to New Orleans was pursuant to the terms and conditions provided in the respondent's regular bill of lading, which incorporated the provisions of the United States Carriage of Goods by Sea Act of 1936.

**4**

Each of the bills of lading issued by respondent recited that the bales of sisal

to which it referred were received on board the SS KENDALL FISH at the loading port in apparent good order and condition, and none of the said bills of lading bore any notation of damage to any of the cargo to which it referred. The bills of lading involved are as follows:

| B/L NO. | Port of Loading | No. of Bales | Marks |
|---|---|---|---|
| 24 | Dar Es Salaam | 176 | LCXP (1) |
| | | 120 | BUCH (1) |
| | | 60 | DXOW (1) |
| | | 4 | LAXMI (1) |
| 25 | Dar Es Salaam | 108 | LCXP A |
| | | 32 | HASP A |
| | | 8 | KBRX A |
| 26 | Dar Es Salaam | 290 | DXOW (2) |
| | | 330 | MADOTO (2) |
| | | 36 | LCXP (2) |
| 29 | Dar Es Salaam | 140 | BCZX No. 1 |
| 33 | Dar Es Salaam | 280 | GDVO No. 1 |
| | | 80 | BCZX No. 3L |
| 38 | Dar Es Salaam | 320 | OBMZ No. 3L |
| 39 | Dar Es Salaam | 160 | BCZX No. A |
| | | 108 | OBMZ No. A |
| 40 | Dar Es Salaam | 272 | OBMZ No. 1 |
| | | 40 | RGZA No. 1 |
| 43 | Dar Es Salaam | 290 | MADOTO (1) |
| | | 110 | IRMW (1) |
| | | 110 | UCIF (1) |
| | | 68 | VXNT (1) |
| 44 | Dar Es Salaam | 68 | LCXP (2) |
| | | 60 | DTFC (2) |
| 45 | Dar Es Salaam | 156 | RGZA No. 2 |
| 47 | Dar Es Salaam | 36 | C.M.S.R. 2 |
| 1 | Tanga | 116 | BBTF |
| | | 68 | VNVT |
| | | 40 | CAZI |
| 2 | Tanga | 64 | RFDC |
| | | 19 | RFDC |
| | | 40 | RFDC |
| 4 | Tanga | 36 | BBTF |
| | | 8 | ACEZ |
| | | 204 | SXRN |
| | | 12 | FZWV |
| | | 72 | ACEZ |
| | | 76 | CHTS |
| | | 4 | FZWV |
| 3 | Tanga | 104 | DSHF |
| | | 124 | MIMI |
| | | 44 | MIMI |
| | | 108 | MIMI |
| | | 92 | DSHF |
| 6 | Tanga | 40 | HFNM |
| 7 | Tanga | 60 | NRBZ |

| B/L NO. | Port of Loading | No. of Bales | Marks |
|---|---|---|---|
| 8 | Tanga | 40 | SHBZ |
|  |  | 168 | DRMH |
|  |  | 52 | LURI |
|  |  | 20 | RXSR |
|  |  | 32 | SHBZ |
|  |  | 24 | DRMH |
| 8 | Tanga | 140 | LDVD |
|  |  | 16 | LDVD |
| 9 | Tanga | 160 | TAHE |
|  |  | 140 | TAHE |
| 10 | Tanga | 30 | RXSR |
| 11 | Tanga | 124 | ACEZ |
| 18 | Tanga | 60 | HXWV |
| 21 | Tanga | 36 | ESRM |

5

The SS KENDALL FISH, laden with the cargo referred to in the foregoing paragraph, arrived at the port of New Orleans on or about June 30, 1952. At that port she did not deliver the cargo of sisal in the same good order and condition as when it was delivered to respondent and laden aboard said vessel. On the contrary, she failed to deliver a number of bales, and an additional number of the bales which were delivered were damaged as a result of contact with fresh water.

6

The sisal covered by the bills of lading referred to in Article 4 was purchased by libellant R. L. PRITCHARD & COMPANY pursuant to the terms and conditions of a contract between libellant and General Services Administration, an agency of the United States Government, dated July 31, 1951. Libellant purchased the sisal in question from Tanganyika Sisal Marketing Association Ltd., otherwise known as TASMA, and was billed by TASMA in its Invoice No. 269 dated May 29, 1952, in the sum of $606,293.78, and Invoice No. 309 dated May 31, 1952, in the sum of $505,458.11.

7

In the normal course of business, and before the SS KENDALL FISH arrived at the port of New Orleans and discharged the shipments of sisal here involved in a short and damaged condition, libellant, relying upon the clean bills of lading, paid TASMA the total amount of its two invoices and obtained possession of the bills of lading covering the shipments

8

Thereafter, in the normal course of business, and before the arrival of the SS KENDALL FISH at the port of New Orleans, libellant sold the sisal covered by the aforesaid bills of lading to General Services Administration and, pursuant to said sale, transferred to General Services Administration the bills of lading, properly endorsed by libellant, the insurance certificates covering the shipment, and such other documents as were required by the provisions of the contract between libellant and General Services Administration.

9

Libellant rendered two invoices to General Services Administration covering the sale of this sisal, the first invoice in the sum of $657,803.70, and the second invoice in the sum of $546,926.15, each of which was paid in full by General Services Administration, again in reliance upon the clean bills of lading.

**10**

After the shortage and damage was discovered upon the arrival of the SS KENDALL FISH at the port of New Orleans, General Services Administration submitted a claim to the underwriters of the cargo for the shortage and damage which had occurred. The shipment was insured in the proportion of 33% through South British Insurance Company, Ltd., 27% through the Central Insurance Company, Ltd., and the remaining 40% through Underwriters at Lloyd's. The said underwriters, through their appropriate representatives, paid the loss to General Services Administration.

**11**

After the payment of the loss to General Services Administration, the underwriting interests caused this proceeding against the carrier to be initiated in the name of R. L. PRITCHARD & COMPANY as agents and representatives for the real party interested in the recovery from the carrier for the loss and damage to the shipments of sisal.

## CONCLUSIONS OF LAW

**1**

The subject matter of this litigation, a claim for damage to cargo while on the high seas, is within the admiralty and maritime jurisdiction of this Court, 28 U.S.C. § 1333.

**2**

The carriage of cargo involved in this litigation was pursuant to the Carriage of Goods by Sea Act of April 16, 1936, 46 U.S.C. §§ 1300–1315.

**3**

██ The cargo covered by the bills of lading issued by the respondent was delivered to the respondent and the SS KENDALL FISH in good order and condition at the ports of Das Es Salaam and Tanga, and was delivered by said vessel at the port of New Orleans in a short and damaged condition. The respondent carrier, having failed to explain the shortage and damage, is responsible therefor. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; The Ciano, D.C., 69 F.Supp. 35; Orient Ins. Co. v. Floto Mercante del Estado, D.C., 102 F. Supp. 729, 1951 A.M.C. 1982.

**4**

██ The libel was properly brought in the name of R. L. PRITCHARD & COMPANY, as agent and representative of the underwriters of the cargo who paid the loss to General Services Administration, and who are entitled to enforce all of the rights of said General Services Administration as holders of the bills of lading in due course. National Interocean Corp. v. Emmons Coal Mining Corp., D.C., 270 F. 997.

**5**

██ Since R. L. PRITCHARD & COMPANY, the nominal libellant, and General Services Administration, to whom the underwriters paid the loss, relied upon the carrier's clean bills of lading in purchasing and paying for the merchandise covered by said bills of lading, respondent is estopped from adducing any evidence to prove that the shortage and/or damage was of pre-shipment origin. Olivier Straw Goods Corporation v. Osaka Shosen Kaisha, 2 Cir., 27 F.2d 129, certiorari denied 278 U.S. 618, 49 S.Ct. 22, 73 L.Ed. 540; The Carso, 53 F.2d 374 (2 Cir.1931), certiorari denied Navigazione Libera Triestina v. Molinelli Giannusa & Rao, Inc., 284 U.S. 679, 52 S.Ct. 140, 76 L.Ed. 574; General Foods Corporation v. The Felipe Camarao, 2 Cir.1949, 172 F.2d 131.

**6**

Libellant, as agent and representative of the underwriters who paid the loss, is entitled to an interlocutory decree against respondent for the loss resulting from the shortage and water damage to the shipments covered by the bills of lading referred to in the libel.

## INTERLOCUTORY DECREE

IT IS ORDERED that an interlocutory decree of liability be entered in

favor of libellant and against respondent.

IT IS FURTHER ORDERED that the issue of damages be submitted to a Master for determination after sixty days from the date of this order unless the parties shall have reached a settlement on the issue of damages. If settlement is not reached, the Master shall be named after sixty days from the date of this order.